IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DUSTIN S. KOLODZIEJ                     §
      *Plaintiff*                      §
                                      §
v.                                      §          C.A. No. 6:11-CV-859-CEH-GJK
                                      §
JAMES CHENEY MASON AND                  §
J. CHENEY MASON, P.A.                   §
      *Defendants*                     §          Jury Demanded

### PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This Court should deny the Motion for Summary Judgment filed by Defendants James Cheney Mason and J. Cheney Mason, PA.[1]  As Plaintiff Dustin S. Kolodziej demonstrates below there are genuine issues of material fact on his breach of contract claim—his only cause of action—so summary judgment is improper.[2]

**I.      Factual background.**

This is a lawsuit for breach of a contract that Mason entered into when he issued a challenge in a national television interview that Kolodziej accepted.[3]  In his challenge, Mason promised to pay $1 million to anyone who completed a trip from a jet landing at the Atlanta airport to the La Quinta hotel there within 28 minutes.[4]  Kolodziej completed the challenge within the allowed time, but Mason has refused to pay.[5]  Mason now claims that his challenge,

---

[1] Doc. 72 (Mason Summary-Judgment Motion).  When it is necessary to differentiate between them, James Cheney Mason is referred to as "Cheney Mason," and J. Cheney Mason, PA is referred to as the "Law Firm."  Cheney Mason and the Law Firm are referred to collectively as "Mason".

[2] Doc. 1 at 7-8 (Original Complaint).

[3] Doc. 1 at 7-8.

[4] Unedited Transcript of Mason's Dateline Interview at 6, attached as Ex. E.

[5] Kolodziej Declaration at ¶ 4, attached as Ex. B; Mason January 2, 2008 Letter to Kolodziej, attached as Ex. J.

which he made in an interview for national television as part of his representation of a capital-murder defendant, was not serious.[6]

### A.    Mason issues a challenge.

Mason is a criminal-defense lawyer in Winter Park, Florida.[7]  This case arises out of Mason's representation of a man named Nelson Serrano in his capital-murder trial.[8]  Serrano, a wealthy businessman, was accused of killing his business partner and three others in 1997.[9]

The murders happened in central Florida, but Serrano claimed that he was in Atlanta that day.[10]  Video cameras at the Atlanta La Quinta hotel showed Serrano at the hotel a few hours after the murders.[11]  Serrano's defense was that it would have been impossible for him to have committed the murders in Florida and been at the Atlanta La Quinta by the time the video showed him there.[12]

Serrano was convicted of the murders in 2006 and sentenced to death in 2007.[13]  As of today, he is still on death row.[14]

Serrano's murder trial received a great deal of publicity and was featured on Court TV.[15] The publicity continued even after the trial.[16]  In December 2006, the Dateline television

---

[6] Doc. 72 at 3, 7, 11-12.

[7] Mason Deposition at 10, attached as Ex. C.

[8] Ex. C at 10-11.

[9] Ex. C at 10-12, 85-86.

[10] Ex. C at 33-35.

[11] Ex. C at 34-35.

[12] Ex. C at 34-35.

[13] Ex. C at 83.

[14] Ex. C at 83.

[15] Ex. C at 23-24.

[16] Ex. C at 12; Dateline Transcript, attached as Ex. D.

program on NBC featured Serrano's case.[17]  Mason went on the program to argue that it was impossible for Serrano to have committed the murders.[18]

In his unedited interview with Dateline, Mason made the challenge at the center of this case.[19]  Mason said it was impossible to travel from an airplane landing at the Atlanta Hartsfield Airport to the hotel where Serrano was seen in 28 minutes.[20]  In the unedited interview, Mason then issued the challenge:

> And from there to be on the videotape in 28 minutes.   Not possible.  Not possible.  I challenge anybody to show me, and guess what?  Did they bring in any evidence to say that somebody made that route, did so?  State's burden of proof.  If they can do it, I'll challenge 'em.  I'll pay them a million dollars if they can do it.[21]

The unedited interview contains what a reasonable viewer would interpret as a promise to pay $1 million if the last leg of the trip—the airplane landing to the hotel—was made within 28 minutes.[22]

### B.      Kolodziej accepts the challenge

Kolodziej—who was a law student at South Texas College of Law at the time—followed the Serrano case.[23]  He saw Mason issue the challenge and decided to accept it.[24]  He wanted to see if he could prove that the prosecution's theory was correct and that Serrano could have murdered these people.[25]

---

[17] Ex. D.

[18] Ex. D.

[19] Ex. E at 6.  Kolodziej is no longer arguing that Mason ratified the version of the challenge on the Dateline broadcast; instead, his claim is limited to Mason's challenge in the raw interview transcript.  *See* Doc. 1 at ¶ 15.

[20] Ex. E at 5-6.

[21] Ex. E at 6.

[22] Ex. E.

[23] Kolodziej Deposition at 8, 14, attached as Ex. A; Ex. B at ¶ 2.

[24] Ex. B at ¶ 2.

[25] Ex. B at ¶ 2.

In December 2007—just after the tenth anniversary of the murders—Kolodziej travelled to Georgia to accept the challenge.[26]  He retraced Serrano's alleged route, flying from Atlanta to Orlando, driving to the scene of the murders, then flying back to Atlanta from Tampa.[27] Kolodziej made the last leg of the journey—from the airplane landing in Atlanta to the location of the La Quinta—within the required 28 minutes.[28]

The airplane that Kolodziej took on the challenge landed at the Atlanta airport at 8:59 pm, and the airplane arrived at the gate at 9:06 pm.[29]  Kolodziej made a video record of his trip from the airplane to the hotel, and—according to the time on his cell phone, which was captured on the video—he left the airplane at 9:06 pm.[30]  Kolodziej arrived at the location of the La Quinta hotel where Serrano was seen at 9:25 pm.[31]

Kolodziej did not set the time on his cell phone.[32]  Instead, the time was automatically set by the signal from the cell tower.[33]  The video that Kolodziej took right before he got on the airplane to Atlanta shows the cell phone clock and an airport clock in the same shot.[34]  The times on the two clocks are the same.[35]  In addition, this was a cell phone that Kolodziej had owned for

---

[26] Ex. B at ¶ 3.

[27] Ex. B at ¶ 3.

[28] Ex. B at ¶ 4.

[29] Delta Air Lines Amended Deposition on Written Questions Response at Q. 15-16, attached as Ex. I.

[30] Ex. B at ¶¶ 5-6.  Because of the video's large size, it is not being e-filed.  Instead, the parties have jointly filed agreed copies of the three videos in the case—Kolodziej's video of the trip, the video of the Dateline story, and the raw video of the interview with Mason—with the Court.  Kolodziej's video of his trip as Joint Ex. A.  *See* Joint Ex. A at 2:59:46-3:00:17.

[31] Ex. B at ¶ 7; Joint Ex. A at 3:18:1-3:18:40.

[32] Ex. B at ¶ 9.

[33] Ex. B at ¶ 9.

[34] Ex. B at ¶ 8; Joint Ex. A at.2:59:29-2:59:43.

[35] Ex. B at ¶ 8; Joint Ex. A at.2:59:29-2:59:43.

some time.[36]  He had compared the time on the cell phone to the actual time both before and after

the trip, and he always found that the cell phone provided the correct time.[37]  This shows that the

time displayed on Kolodziej's cell phone was the correct time.

Mason admits that if the airplane landed at 8:59 pm and Kolodziej made it to the location

of the La Quinta hotel where Serrano was seen at 9:25 pm, then he made the trip within 28

minutes.[38]

### C.   Mason refuses to pay Kolodziej.

Kolodziej sent the video tracking his trip, along with a demand letter, to Mason when he

returned from the trip.[39]  Mason wrote Kolodziej back in January 2008.[40]  He told Kolodziej that

it was just a joke and that "[c]ertainly neither you (reasonably) or anybody else could think that

there was a clear intention to pay anybody a million dollars or any other amount."[41]  Mason

refused to pay Kolodziej the promised $1 million.[42]

Kolodziej wrote Mason back and informed him again that he owed the money.[43]  In

February 2008, Mason wrote Kolodziej back and again refused to pay.  Mason then said that he

would "consider any further communications from [Kolodziej] to be in the nature of attempted

extortion and/or mail fraud, and will act accordingly."[44]  In response to Mason's threat of

---

[36] Ex. B at ¶ 9.

[37] Ex. B at ¶ 9.

[38] Ex. C at 79 (("Q. Okay. Okay. If the flight was wheels down at 8:59 p.m., Mr. Kolodziej's flight, and he appears at the location at 9:25 p.m. where Mr. Serrano was seen, that address, is that within 28 minutes?  A. Well, mathematically – of course.") (objection omitted).

[39] Ex. C at 80; Ex. J.

[40] Ex. J.

[41] Ex. J.

[42] Ex. J.

[43] Mason February 11, 2007 Letter to Kolodziej, attached as Ex. K.

[44] Ex. K.

criminal prosecution if he continued pursuing the matter informally, Kolodziej was forced to retain a lawyer and file suit.

## II.  Summary-Judgment Standard.

Summary judgment is not appropriate unless there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law.[45]  As the moving party, Mason has the burden of demonstrating that there are no genuine disputes of material fact.[46]

There is a fact issue—and summary-judgment is improper—if the record taken as a whole could lead a rational trier of fact to find for the non-moving party.[47]  That standard is met—and summary-judgment should be denied—if Kolodziej, the non-movant, produces more than a scintilla of evidence supporting his claim.[48]

In deciding the summary-judgment motion, this Court views all facts in the light most favorable to non-movant Kolodziej and draws all inferences in his favor.[49]  This Court does not make credibility determinations or weigh the parties' evidence at the summary-judgment stage.[50]

## III.  This Court should deny Mason's summary-judgment motion because Kolodziej has evidence that Mason made an offer that he accepted, thus creating a binding contract.

Mason's summary-judgment motion is limited solely to whether there is a contract.  He is not challenging whether the contract was breached or whether Kolodziej suffered damages as a result of the breach.  This Court should deny Mason's summary-judgment motion because

---

[45] FED. R. CIV. P. 56(a).

[46] *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300, 1309 (11th Cir. 2012).

[47] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 702 F.3d 1312, 1316 (11th Cir. 2012).

[48] *Kernel Records*, 694 F.3d at 1301.

[49] *Frederick v. Sprint/United Mgmt. Co.*, 146 F.3d 1305, 1311 (11th Cir. 2001).

[50] *Frederick*, 146 F.3d at 1311.

Kolodziej has provided more than a scintilla of evidence that Mason made an offer that he accepted, thus creating a contract.

> **A.  There is more than a scintilla of evidence that Mason made an offer that Kolodziej could accept.**

Mason issued a challenge in the interview with Dateline when he said that he would pay $1 million to anyone who could make the trip from an airplane landing at the Atlanta airport to the location of the hotel where Serrano was seen within 28 minutes.[51]  Kolodziej has more than a scintilla of evidence that Mason's challenge was a contract offer that he could accept.

> **1.  The test is whether a reasonable person would think this was a serious offer, so Mason's subjective intent is irrelevant.**

In determining whether Mason made a valid offer, this Court uses the objective—rather than subjective—view.  The issue is whether a reasonable person hearing Mason's offer would think that a real offer had been made.[52]  Mason's subjective intent is irrelevant.[53]

Therefore, in deciding this summary-judgment motion, this Court must determine whether there is more than a scintilla of evidence that a reasonable person hearing Mason's offer would think that a real offer had been made.[54]  In other words, this Court must consider whether a rational juror could find that a reasonable person hearing Mason's offer would think that a real

---

[51] Ex. E at 6.

[52] *Robbie v. City of Miami*, 469 So. 2d 1384, 1385 (Fla. 1985) ("We have consistently held that an objective test is used to determine whether a contract is enforceable. … The making of a contract depends not on the agreement of two minds in one intention, but on the agreement of two sets of external signs-not on the parties having meant the same thing but on their having said the same thing.") (internal citations and quotation omitted); *Jackson v. Inv. Corp. of Palm Beach*, 585 So.2d 949, 950 (Fla. 4th DCA 1991) ("test of the true interpretation of an offer or acceptance is not what the party making it thought it meant or intended it to mean, but what a reasonable person in the position of the parties would have thought it meant").

[53] *Akileh v. Elchahal*, 666 So.2d 246, 249 (Fla. 2d DCA 1996) ("The husband's subjective intent at the time he entered into the agreement is not material in construing the contract.*"); Med-Star Cent., Inc. v. Psychiatric Hosp. of Hernando County, Inc.*, 639 So. 2d 636, 637 (Fla. 5th DCA 1994) ("their subjective intent is not material in determining whether a contract was made").

[54] *Kernel Records*, 694 F.3d at 1301.

offer had been made.[55]  If a rational juror could make that finding, then this Court must determine that Kolodziej has met his summary-judgment burden of showing that Mason made a legitimate offer that he could have accepted.[56]

> **2.     A rational juror could find that a reasonable person could have concluded that Mason's offer was made to the general public, as opposed to solely the prosecutors.**

Mason claims that his challenge was solely to the prosecutors, not to the general public.[57] So, according to Mason, Kolodziej—who is a private citizen—could not have accepted the offer.[58]  Mason, however, has not conclusively established that a reasonable person hearing the challenge would conclude that it was not addressed to the general public.  Instead, a rational juror could find that a reasonable person hearing Mason's statement could conclude that the challenge was made to the general public and not just the prosecutors.  Summary judgment, therefore, is improper.

In the interview with Dateline, Mason said Serrano could not get from the airplane in Atlanta to the hotel in 28 minutes.[59]  He described the difficulty of making the trek and said:

> And from there to be on the videotape in 28 minutes.  Not possible.  Not possible.  I challenge anybody to show me, and guess what?  Did they bring in any evidence to say that somebody made that route, did so? State's burden of proof.  If they can do it, I'll challenge 'em.  I'll pay them a million dollars if they can do it.[60]

Focusing on the language that Mason used shows that a reasonable person could interpret the challenge as being addressed to the general public as opposed to just the prosecutors.

---

[55] *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *Miller's Ale House, Inc.*, 702 F.3d at 1316.

[56] *Kernel Records*, 694 F.3d at 1301.

[57] Doc. 72 at 9-12.

[58] Doc. 72 at 3, 9, 11-12.

[59] Ex. E at 5 ("And, of course, just as importantly is – is the business of getting back to Atlanta, and getting from – landing in Atlanta and getting to the – to the hotel in 28 minutes.").

[60] Ex. E at 6.

Mason says that he will challenge "anybody to show him" that the trip could be made in 28 minutes.[61]  The word "anybody" shows that the challenge is addressed to the general public. It certainly does not indicate that the offer is limited to the prosecutors.

Mason then states that the prosecution had the burden of proof, but it failed to provide evidence showing that anyone made the trip in 28 minutes.[62]  This is a parenthetical comment that is not part of the challenge.  Mason has challenged anyone to make the trip, and he is now stating that the prosecution never could show that they could make the trip in 28 minutes, even though it carried the burden of proof in the trial.

Mason then turns back to the challenge and says that he will pay $1 million to anyone who can perform the challenge.  He says that "[i]f they can do it, I'll challenge 'em, I'll pay them a million dollars if they can do it."[63]  Mason is linking his offer to pay $1 million with his challenge for "anybody to show him" that the trip could be made in 28 minutes.[64]

In addition, the people hearing the challenge live did not interpret it solely as made to the prosecutors.  After Mason made the challenge, the Dateline interviewer stated that "[a]ll of the camera guys were leaving to go to [the Atlanta] Hartsfield [airport] try to get to the …."[65]

---

[61] Ex. E at 6.

[62] Ex. E at 6.  The interview transcript includes in one sentence Mason's challenge to "anybody" to show him the trip could be made in 28 minutes with the beginning of Mason's discussion of the prosecution's failure to prove it could not be done.  Specifically, the transcript does not put a period or semicolon between "show me" and "and guess what."  Ex. E at 6.  This Court should not give weight to the punctuation in the interview transcript, because that is just how the transcriptionist decided to punctuate it.  Ex. E at 2.  Instead, this Court should focus on the video itself.  This Court can determine where the sentence breaks occur.  Viewing the transcript shows that Mason's break between "show me" and "and guess what" was to turn to a separate thought that should be marked by a period or semicolon.  So this was a separate thought that differentiated the challenge to the public and the discussion of the prosecution's alleged failure to meet its burden.  At a minimum, a rational juror could conclude that a reasonable person would see the two parts of the sentence as separated by a period or semicolon, as opposed to just a comma. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *Miller's Ale House, Inc.*, 702 F.3d at 1316.

[63] Ex. E at 6.

[64] Ex. E at 6.

[65] Ex. E at 7.

Mason responds, "[c]all me when you're ready for your check."[66]  While that exchange was a joke, it shows that Mason and the Dateline crew interpreted the challenge as open to anyone— not just to the prosecutors.  If the challenge really were solely to the prosecutors, there would be nothing funny about non-prosecutor cameramen joking that they were heading out to complete the challenge.  And Mason would have at a minimum jokingly responded that they were out of luck because they were not prosecutors.  That did not happen.  Instead Mason and the Dateline crew all understood that the challenge was open to anyone who could complete it.

Mason, therefore, has not conclusively established that the challenge is not to "anyone" but is, instead, solely to the prosecutors.  A rational juror could find that a reasonable person hearing Mason's statement could conclude that the challenge was made to the general public and not just the prosecutors.  That means there is a fact issue on whether the offer was made to the general public or just to the prosecutors, and summary judgment in inappropriate.[67]

> 3.  **Mason's summary-judgment motion on the issue that his challenge was not serious is limited to the idea that his offer was made solely to the prosecutors—he is not seeking summary judgment on the ground that his challenge to the general public was not serious.**

Mason claims that his challenge was "clearly hyperbole."[68]  As an initial matter, Mason's claim that the offer was not serious is bound up with his claim that the challenge was solely to the prosecutors.  Mason says that:

> A criminal defense counsel's "challenge" to pay prosecutors (public employees who would be unlikely to be able to accept compensation from private parties for performing their official duties) the colloquial sum of "a

---

[66] Ex. E at 7.

[67] Kolodziej contends that Mason's offer was unambiguously to the general public.  But because he is the non-movant in this summary-judgment motion, he is not pressing that point in this response.  Kolodziej reserves his right to raise that point.

[68] Doc. 72 at 11-12.

million dollars" if they could perform a particular challenge substantiating a theory of a criminal case could not be taken seriously by anyone.[69]

Mason then concludes by stating that "no reasonable person could have understood that Mason was issuing a serious challenge to pay the prosecutors $1,000,000.00 if they could demonstrate that their theory of the case was viable."[70]

Mason never argues that his offer to pay anyone—as opposed to just the prosecutors, who Mason admits are limited in their ability to enter into such a contract—$1 million to perform the challenge was not serious.[71]  His claim that the challenge was "hyperbole," or somehow not a serious offer, is limited solely to the context of the offer being made only to the prosecutors.[72]

If this Court concludes that there is no evidence that the offer was made to the general public—as opposed to just the prosecutors—then it will grant summary judgment on that ground, because Kolodziej is not a prosecutor.[73]  It does not matter in this case whether Mason's offer to the prosecutors was serious because Kolodziej could not accept that offer.  So Mason's argument that his challenge to the prosecutors was not serious is irrelevant.

If this Court concludes that there is a fact issue on whether Mason's challenge was to the general public, it also does not have to address Mason's argument that the challenge was not serious.  Mason has not moved for summary judgment on the ground that his challenge to the general public was not a serious offer, so that issue is not before this Court.

---

[69] Doc. 72 at 11-12.

[70] Doc. 72 at 12.

[71] Doc. 72 at 11-12.

[72] Doc. 72 at 11-12.

[73] *See* § III(A)(2) above.

    **4.**    **Even if this Court were to consider whether Mason's challenge to the general public was serious—a ground that Mason has not raised—summary judgment is improper because a reasonable person could conclude that the challenge was serious.**

This Court should not consider whether Mason's challenge to the general public was a serious offer, because that is not a ground on which he is seeking summary judgment. But even if this Court were to consider whether the challenge to the general public was a serious offer, there is more than a scintilla of evidence that a rational juror could find that a reasonable person hearing Mason's statement could conclude that he was making a serious offer. Summary judgment, therefore, is improper on the ground that Mason's challenge to the general public was not a serious offer.

This is what is referred to as a "prove-me-wrong case."[74] In these cases, people promise to pay large sums of money if someone can prove them wrong.[75] Courts have found that offers in these cases were enforceable under a wide variety of circumstances—most of them colorful:[76]

- A man claimed that Jesse James—the famous outlaw—was not killed in 1882 as most people thought; instead, he claimed that James lived until the 1950s. He went on national television and offered a $10,000 reward to "anyone who could prove me wrong."[77] James' widow and children came forward with evidence showing that James was killed in 1882.[78] The appellate court held that there was a valid contract and affirmed the jury's award requiring the man to pay the money.[79]

- The Eighth Circuit determined that a tax protester's assertion that "if anybody calls this show … and cites any section of the [internal

---

[74] *Leonard v. Pepsico*, 88 F.Supp.2d 116, 125 (S.D.N.Y. 1999).

[75] *See Newman v. Schiff*, 778 F.2d 460 (8th Cir. 1985); *Pepsico*, 88 F.Supp. 2d at 127-28; *James v. Turilli*, 473 S.W.2d 757 (Mo. App. 1971); *Carhill v. Carbolic Smoke Ball Co.*, 1 Q.B. 256 (Court of Appeal, 1892), attached as Ex. M.

[76] The cases cited do not come from Florida courts. But as the *Pepsico* court recognized, "the questions presented by this case implicate questions of contract law deeply ingrained in the common law of England and the States of the Union." *Pepsico*, 88 F.Supp. 2d at 123 (internal quotation omitted).

[77] *James*, 473 S.W.2d at 759.

[78] *Id*. at 758-60.

[79] *Id*. at 763.

revenue] code that says an individual is required to file a tax return, I'll pay them $100,000" was a valid offer.[80]

- The vice president of company that sold punchboard gaming devices was testifying before a state gambling commission in a license hearing.[81]  He testified—to "laughter from the audience"—that "I'll pay a hundred thousand dollars to anyone to find a crooked board.  If they find it, I'll pay it."[82]  A person who saw news reports on the testimony came forward with evidence that he had previously bought "crooked punchboards" from the company.[83]  The appellate court determined that the challenge was a valid offer and created an enforceable contract.[84]

Perhaps the most famous prove-me-wrong case is *Carbolic Smoke Ball*, which has been studied by generations of law students.[85]  There was an influenza epidemic in London in the 1890s.[86]  A company took out newspaper ads offering a £100 reward to any person who contracted "influenza, colds, or any diseases caused by taking cold, after having used the ball three times daily for two weeks according to the printed directions supplied with each ball."[87]  A woman bought the smoke ball and used it as directed, but still contracted influenza.[88]  She sued for the £100 when the company would not pay.  The court—in a seminal decision on unilateral contracts—held that there was a valid contract because the company's advertisements were

---

[80] *Newman*, 778 F.2d at 466-67 (the court held that there was no contract because the plaintiff did not comply with the offer's terms, but it held that there was a valid offer).

[81] *Barnes v. Treece*, 549 P.2d 1152, 1154 (Wash. App. 1976).

[82] *Id.*

[83] *Id.*

[84] *Id.* at 1154-56.

[85] *Carbolic Smoke Ball*, 1 Q.B. 256 (Ex. M).

[86] *Id.* at 257.

[87] *Id.* at 256–57.

[88] *Id.* at 257.

"offers to anybody who performs the conditions named in the advertisement, and anybody who does perform the condition accepts the offer."[89]

At the opposite end of the spectrum is *Pepsico*, where the court correctly determined that the alleged offer was a joke and could not create a binding contract.  Pepsico—the maker of Pepsi and Diet Pepsi—ran an advertising campaign that encouraged consumers to collect "Pepsi Points" from its products.[90]  The points could be redeemed for merchandise featuring the Pepsi logo.[91]  Pepsico's television commercial showed various items and their Pepsi Points.[92]  This included a t-shirt for 75 Pepsi Points and a leather jacket for 1,450 Pepsi Points.[93]  The commercial then shows a teenage boy landing a Harrier jet fighter airplane at his high school and states "Harrier Fighter 7,000,000 Pepsi Points."[94]

The plaintiff in *Pepsico* tried to redeem the Pepsi Points for the Harrier jet.[95]  He sued when Pepsico would not convey the Harrier jet to him.[96]  The Southern District of New York granted summary judgment against the plaintiff.[97]  It held that no objective reasonable person could conclude that Pepsico had really offered to sell a Harrier jet for 7,000,000 Pepsi Points.[98]  The court noted the humorous nature of the advertisement, including having a teacher's clothes

---

[89] *Id.* at 262.

[90] *Pepsico*, 88 F.Supp. 2d at 118.

[91] *Id*.

[92] *Id*.

[93] *Id*.

[94] *Id.* at 119.

[95] *Id*.  Pepsi Points could be purchased for $0.10 each, so the plaintiff sought to purchase the 7,000,000 Pepsi Points for $700,000.

[96] *Id*. at 120.

[97] *Id*. at 132.

[98] *Id*. at 128-30.

blown off by the jet blast.[99]  And it focused on the fact that the Harrier jet is a military aircraft designed to "attack and destroy surface targets under day and night visual conditions" that carries over 9,000 pounds of "bombs and missiles."[100]  The court also noted the discrepancy between the $23 million cost of the Harrier jet and the supposed ability to buy it by drinking 7,000,000 pepsis or tendering $700,000 to purchase 7,000,000 Pepsi Points.[101]  Based on all of these factors, the court held that the commercial was "clearly in jest" and not a serious offer.[102]

This case is much closer to *Carbolic Smoke Ball* than it is to *Pepsico*.  In *Pepsico*, the alleged offer was obviously a joke.  In this case it is hard to see what was funny about a challenge that could help prove that a man was convicted and sentenced to die for crimes he allegedly did not commit.  It seems that there is hardly any subject less humorous—especially to a criminal-defense lawyer like Mason—than the possibility that an innocent man will be executed.[103]

The facts of this case are somewhat unusual, but that is how these prove-me-wrong cases tend to go.  Despite the uniqueness of these circumstances, a rational juror could find that a reasonable person hearing Mason's statement could conclude that the challenge was serious.  That means summary judgment in inappropriate.

---

[99] *Id*. at 129 ("The force of the wind generated by the Harrier Jet blows off one teacher's clothes, literally defrocking an authority figure.").

[100] *Id*.

[101] *Id*.

[102] *Id*. at 130.

[103] Ex. C at 87 (Mason agrees "that there's no greater miscarriage of justice than an innocent man being put to death for a crime he did not commit.").

### 5. The terms of the offer were sufficient to create a contract under Florida law.

Mason claims that there can be no contract because the terms of his offer were not specific enough to create a contract.[104]  The Florida Supreme Court, however, has held that "courts should be *extremely hesitant* in holding a contract void for indefiniteness."[105]  Contracts do not have to spell out every term; instead, only the essential elements must be specified.[106]

Here, the contract's essential elements were clear:  Mason would pay $1 million to anyone who could make the trip within 28 minutes from an airplane landing at the Atlanta airport to the location of the Atlanta hotel where Serrano was seen on December 3, 1997.[107]  The contract, therefore, is not void because of uncertainty.[108]

Mason alleges that there can be no contract because he did not specify the specific seat on the airplane the person was in; how many other passengers were on the airplane; what gate and terminal the airplane must arrive at; or the specific transportation from the airport to hotel.[109]  Mason, however, has not shown that those are essential contract terms that had to be specified.  In fact, Mason even said in the Dateline interview that most of those issues do not matter.[110]

This Court, therefore, should not take the extreme step of holding the contract void based on uncertainness.

---

[104] Doc. 72 at 12-15.

[105] *Blackhawk Heating & Plumbing Co. v. Data Lease Financial Corp.*, 302 So.2d 404, 408 (Fla. 1974); *see also Bowe v. Giardina*, 719 So.2d 941, 942 (Fla. 3d DCA 1998) ("Courts are reluctant to hold contracts unenforceable on grounds of uncertainty") (internal quotation omitted).

[106] *Blackhawk Heating*, 302 So.2d at 408; *Williams v. Ingram*, 605 So.2d 890, 893 (Fla. 1st DCA 1992).

[107] Ex. E at 6-7.

[108] *See Blackhawk Heating*, 302 So.2d at 408.

[109] Doc. 72 at 13.

[110] Ex. E at 6 (specifically leaving open the concourse and gate arrived at and whether in first class); *see* § III(B)(3)-(4) below.

**B.** **There is more than a scintilla of evidence that Kolodziej performed the challenge, thus accepting Mason's offer and creating a binding contract under Florida law.**

The contract between Mason and Kolodziej is a unilateral one.[111]  In a bilateral contract—the more typical contract form—the two parties exchange promises.[112]  The consideration is the promise for a promise, and the parties are bound upon making the promises.[113]  In a unilateral contract, however, only one side makes a promise.[114]  The other party accepts the contract by performing.[115]

Kolodziej accepted the offer—thus creating a binding contract—when he performed the challenge.[116]  Because Kolodziej has provided more than a scintilla of evidence that he completed the challenge within the required 28 minutes, there is a genuine issue of material fact on whether the contract exists.  Summary judgment, therefore, is improper.

**1.** **Kolodziej has provided more than a scintilla of evidence that he made it from the airplane touching down at the Atlanta airport to the location of the La Quinta where Serrano was seen within 28 minutes.**

Delta Airline's records show that the airplane that Kolodziej took on the challenge landed at the Atlanta airport at 8:59 pm and arrived at the gate at 9:06 pm.[117]  Kolodziej made a video record of his trip from the airplane to the hotel, and—according to the time on his cell phone,

---

[111] *Southampton Dev., v. Palmer Realty Group, Inc.*, 769 So.2d 1113, 1115 (Fla. 2d DCA 2000).

[112] *Ballou v. Campbell*, 179 So.2d 228, 229 (Fla. 2d DCA 1965) ("A unilateral contract is one in which no promisee receives a promise as consideration for his promise.  A bilateral contract is one in which there are mutual promises between two parties to the contract; each party being both a promisor and a promisee.") (quoting RESTATEMENT OF CONTRACTS § 12).

[113] 1 RICHARD A. LORD, WILLISTON ON CONTRACTS § 1:14 (4th ed.) ("A unilateral contract results from an exchange of a promise for an act, while a bilateral contract results from an exchange of promises.").

[114] *Southampton Dev.*, 769 So.2d at 1115; *Ballou*, 179 So.2d at 229.

[115] *Southampton Dev.*, 769 So.2d at 1115; *see also Kolodziej v. Mason*, No. 10-CV-2012, 2011 WL 2009467, at *4 (N.D. Ga. May 20, 2011) ("Under the theory of a unilateral contract, Mason incurred an obligation to pay upon the acceptance and performance of the contract.")

[116] *Southampton Dev.*, 769 So.2d at 1115

[117] Ex. I at Q. 15-16.

which was captured on the video—he left the airplane at 9:06 pm.[118]  Kolodziej arrived at the

location of the La Quinta hotel where Serrano was seen at 9:25 pm.[119]  Therefore, Kolodziej has

video evidence that he made the trip to the hotel within 26 minutes after the airplane landed at

the Atlanta airport.[120]  That is within the required 28 minutes.

   Kolodziej has evidence that the time on his cell phone was correct, thus verifying that the

trip was made within 28 minutes.  Kolodziej testified that he did not set the time on his cell

phone.[121]  Instead, the time was automatically set by the signal from the cell tower.[122]  The video

that Kolodziej took right before he got on the plane to Atlanta shows the cell phone clock and an

airport clock in the same shot.[123]  The times on the two clocks are the same.[124]  In addition, this

was a cell phone that Kolodziej had owned for some time.[125]  He had compared the time on the

cell phone to the actual time both before and after the trip, and he always found that the cell

phone provided the correct time.[126]  This shows that the time displayed on Kolodziej's cell phone

was the correct time.

   Kolodziej, therefore, has evidence that the airplane landed at 8:59 pm and he was at the

location of the La Quinta hotel where Serrano was seen by 9:25 pm.[127]  Even Mason admits that

if the airplane landed at 8:59 pm and Kolodziej made it to the location of the La Quinta hotel

---

[118] Ex. B at ¶¶ 5-6; Joint Ex. A at 2:59:46-3:00:17.

[119] Ex. B at ¶ 7; Joint Ex. A at 3:18:1-3:18:40.

[120] Because this time is from when the plane landed to when Kolodziej was at the hotel, it includes the time for the airplane to taxi to the gate and for the airplane door to open.  *See* Doc. 72 at 15-17.

[121] Ex. B at ¶ 9.

[122] Ex. B at ¶ 9.

[123] Ex. B at ¶ 8; Joint Ex. A at 2:59:29-2:59:43.

[124] Ex. B at ¶ 8; Joint Ex. A at 2:59:29-2:59:43.

[125] Ex. B at ¶ 9.

[126] Ex. B at ¶ 9.

[127] The fact that the location Kolodziej arrived at is the same location as the La Quinta hotel where Serrano was seen at on December 3, 1997, is addressed in § III(B)(5) below.

where Serrano was seen at 9:25 pm, then he made the trip within 28 minutes.[128]  Kolodziej,

therefore, has provided more than a scintilla of evidence that he completed the challenge within

the required 28 minutes, thereby accepting Mason's offer and creating a contract.

> **2.     Mason's expert who claims that it took at least 5 minutes before the airplane's door opened—assuming he is not excluded—does not conclusively prove that it took that long, because Kolodziej testified—backed up by video and airline records—that it took only a minute.**

Mason argues that his expert Daniel McDyre has proven that Kolodziej's airplane took at

least 5 minutes after it arrived at the gate before the door opened.[129]  Mason argues that

Kolodziej, therefore, could not have completed the trip from landing at the Atlanta airport to the

hotel within 28 minutes.[130]

There are two problems with Mason's argument.  First, it relies on an expert witness

whose opinion is should be excluded because it is based on unreliable methodology.  Second, at

most Mason has created a fact issue because Kolodziej has provided evidence that the door

opened within a minute of the airplane arriving at the gate.

As Kolodziej explained in his motion to exclude McDyre's testimony and in his objection

to McDyre's summary-judgment declaration, this Court should exclude McDyre's opinion on

how long it took the airplane's door to open.[131]  McDyre's opinion that it took 5 minutes for the

airplane door to open is based on a junk-science study that he made by watching 14 airplanes at

the Los Angeles and Reno airports to see how long it took them to open their doors after arriving

---

[128] Ex. C at 79 (("Q. Okay. Okay. If the flight was wheels down at 8:59 p.m., Mr. Kolodziej's flight, and he appears at the location at 9:25 p.m. where Mr. Serrano was seen, that address, is that within 28 minutes?  A. Well, mathematically – of course.") (objection omitted).

[129] Doc. 72 at 16-17.

[130] Doc. 72 at 16-17.

[131] Doc. 71 at 10-11; Kolodizej's Objection to Mason's Summary-Judgment Evidence and Motion to Exclude (filed contemporaneous with this summary-judgment response).

at the gate.[132]  Because this Court should exclude McDyre's opinion, his claim that it took 5 minutes for the door to open does not matter.[133]

There is a fact issue even if this Court considers McDyre's opinion.  Kolodziej testified that the airplane door opened less than a minute after the airplane arrived at the gate.[134]  In addition, the cellphone clock on Kolodziej's video shows the airplane's door open was open at 9:06 pm, which is the same time that the airplane arrived at the gate according to Delta's records.[135]  So there is evidence that Kolodziej's airplane's door opened within one minute of arriving at the gate, not over five minutes later.  The contradictory evidence means that there is a fact issue and that summary judgment is improper.[136]

> **3.     The challenge did not include exiting from any particular seat, and Serrano could have been one of the first off the plane even in coach because the L1011 that he was on can unload through a door between first class and coach.**

Mason argues that Kolodziej could not sit in first class and that he should have been sitting in rows 30 or 32, where Serrano supposedly sat.[137]  But nothing in the challenge says where the person completing the challenge had to sit.[138]  In fact, in the Dateline interview,

---

[132] Doc. 71 at 12.

[133] Kolodziej adopts by reference his argument that he made in his motion to exclude regarding McDyre.  Doc. 71 at 10-14.

[134] Doc. 72 at 16; Ex. A at 34 ("Q. What's your testimony of about how long it took before the time that they arrived at the gate and they opened the doors?  A. Very little, less than a minute.  Q. Less than one minute?  A. Absolutely. It was immediate.").

[135] Ex. B at ¶ 6; Ex. I at Q. 15-16; Joint Ex. A at 2:59:46-3:00:17.

[136] *See Frederick*, 146 F.3d at 1311 (this Court does not make credibility determinations or weigh the parties' evidence at the summary-judgment stage).

[137] Doc. 72 at 17.

[138] Ex. E at 6-7.

Mason specifically discussed how hard it was to get off an airplane "[e]ven if you're first class."[139]

In addition, coach passengers on Serrano's airplane could have exited as quickly as first class passengers on Kolodziej's airplane.  The airplane that Serrano was allegedly on was an L1011, while Kolodziej's airplane was a 767.[140]  The L1011—unlike the 767—can unload passengers from a door between the first class and coach cabins.[141]  So a passenger sitting in coach could be exit the airplane at the same time a passenger in first class was exiting.  Mason himself discusses this in the Dateline interview when he says that many coach passengers are able to exit the plane early when the exit is behind the first class cabin.[142]

Mason, therefore, has not shown that Kolodziej failed to complete the challenge because he sat in first class.

### 4. A particular gate and terminal are not part of the challenge, and there is no evidence of the gate or even the terminal where the airplane Serrano was allegedly on landed.

Mason also claims that Kolodziej could not have completed the challenge because he arrived at Terminal T instead of one of the other terminals.[143]  Mason alleges that Terminal T was not allowed because it allegedly does not require a use of the airport train.[144]  The challenge, however, does not require the person completing the challenge to take the airport train.[145]

---

[139] Ex. E at 6.

[140] McDyre Deposition at 27, attached as Ex. F.

[141] Ex. C at 68; Ex. F at 30-31; McDyre Report, attached as Ex. G.

[142] Ex. E at 6 ("Even if you're in first class.  They usually put the thing behind you so you got to wait till half the plane gets off anyway.").

[143] Doc. 72 at 17-18.

[144] Doc. 72 at 17-18.

[145] Ex. E at 6-7.

Mason mentions the airport train in the interview, but it is not part of the challenge.[146] Instead, it is part of his general discussion of the difficulties of getting off airplanes and through airports.[147] Mason discusses how long one might wait "depending on which concourse you're landing in," so he is not specifying any particular terminal.[148] Mason also talks about getting "boxed in" by "the lady with the kids in the carriage" or "the fat one can't get down the aisle."[149] By Mason's logic, Kolodziej could not have completed the challenge unless he had to navigate his way past both a mother with a stroller and a heavy gentleman. Mason has not shown that every rational juror would conclude that taking the airport train was part of the challenge.

Even today, Mason cannot say whether Serrano took the terminal train under the prosecution's theory. Mason admits that he has "no idea" which terminal Serrano supposedly arrived at.[150] Mason's expert on the state's case against Serrano and Serrano's alibi does not know whether Serrano took the terminal train, and he testified that he does not think that the state "ever made that a part of their case."[151]

Mason, therefore, has not shown that Kolodziej failed to complete the challenge because his airplane arrived at Terminal T and he did not take the airport train.

### 5. Kolodziej has evidence that he went to the location of the La Quinta hotel where Serrano was seen.

Kolodziej ended his December 10, 2007 trip from the Atlanta airport at 4874 Old National Highway, College Park, Georgia 30337.[152] That location is now an EconoLodge

---

[146] Ex. E at 6-7.

[147] Ex. E at 6-7.

[148] Ex. E at 6.

[149] Ex. E at 6-7.

[150] Ex. C at 66.

[151] Lykkebak Deposition at 20-21, attached as Ex. H.

[152] Ex. B at 7; Joint Ex. A at 3:15:48; Joint Ex. A at 3:15:20-32; Joint Ex. A 3:17:10-16.

hotel.[153]  Kolodziej has more than a scintilla of evidence that 4874 Old National Highway was the location of the La Quinta hotel where Serrano was seen on December 3, 1997.  Kolodziej, therefore, has more than a scintilla of evidence that he made the trip from the airplane landing at the Atlanta airport to the location of the hotel where Serrano was seen within 28 minutes.

Kolodziej took the deposition on written questions of LQ Management, LLC, the company that operates La Quinta hotels.[154]  The company testified that on December 3, 1997, there was a La Quinta hotel located at 4874 Old National Highway, College Park, Georgia 30337.[155]  The company also testified that the 4874 Old National Highway location was the only La Quinta hotel "operating within 10 miles of the Atlanta, Georgia airport on December 3, 1997."[156]  In the Dateline interview, Mason stated that the hotel where Serrano was seen was "five miles away" from the airport.[157]

Therefore, 4874 Old National Highway must be the location of the La Quinta hotel where Serrano was seen on December 3, 1997.  At a minimum, this is more than a scintilla of evidence that Kolodziej went to the right location.

**IV.    There is evidence that both Cheney Mason and the Law Firm can each be liable for the contract, and Kolodziej is not required to elect who he will recover judgment against until after the trial.**

Mason claims that he practices law solely through the Law Firm and has done so for 35 years.[158]  He claims that his representation of clients is done solely through the Law Firm.[159]

---

[153] Ex. B at 7.

[154] LQ Management, LLC Deposition on Written Questions Response, attached as Exhibit L; http://www.lq.com/lq/about/index.jsp.

[155] Ex. L.

[156] Ex. L.

[157] Ex. E at 5 ("CHENEY MASON, ESQ: … And, of course, just as importantly is – is the business of getting back to Atlanta and getting from – landing in Atlanta and getting to the – to the hotel in 28 minutes.  DENNIS MURPHY: Airport hotel.  CHENEY MASON, ESQ: Well, no, *it's not at the airport.  It's five miles away*.") (emphasis added).

[158] Ex. C at 18.  Mason is the Law Firm's only shareholder.  Ex. C at 26.

Mason argues that Kolodziej cannot sue him in both his individual and corporate capacity.[160]  He claims that this Court should grant summary judgment as to either Cheney Mason individually or the Law Firm.[161]  He argues that if there is a contract with the law firm, then Cheney Mason individually cannot be liable because a corporation's officers are "not personally liable for contracts of the corporation."[162]

This is not a situation where there was a written contract that clearly stated that the XYZ Corporation was entering into a contract and that John Doe was signing the contract as president of the XYZ Corporation.  In that situation, there is no question that the XYZ Corporation is a party to the contract but that John Doe is not.[163]  Instead, here we have Cheney Mason going on television and making an offer regarding his representation of Serrano.  Cheney Mason does not specify that the offer is on behalf of the Law Firm or identify himself as the Law Firm's agent.  In this type of situation, the plaintiff can recover against either the corporation or the corporate officer.[164]

Cheney Mason did the interview as part of his representation of Serrano as an attorney.[165]  Therefore, he did the interview both individually as an attorney representing Serrano and as an officer for the Law Firm.  He never claimed in the interview that he was speaking on behalf of the Law Firm or in his individual capacity.[166]  Because Cheney Mason did not state that he was

---

[159] Ex. C at 20-22.

[160] Doc. 72 at 13 n.4.

[161] Doc. 72 at 13 n.4.

[162] Doc. 72 at 13 n.4 (quoting *Steele v. Hallandale, Inc.*, 125 So.2d 587, 589 (Fla. 2d DA 1960)).

[163] *Steele*, 125 So.2d at 589.

[164] *Collins v. Aetna Ins. Co.*, 138 So. 369, 370 (Fla. 1931); *Amoroso v. Samuel Friedland Family Enterprises*, 604 So.2d 827, 832 (Fla. 4th DCA 1992); *Bertram Yacht Sales, Inc. v. West*, 209 So. 2d 677, 679 (Fla. 3d DCA 1968).

[165] Ex. C at 26.

[166] Ex. E.

supposedly speaking on behalf of the Law Firm—as opposed to just for himself personally—the Law Firm is an undisclosed principal.

When someone enters into a contract for an undisclosed principal, either the agent or principal can be held liable.[167]  The plaintiff must elect the party that he will take judgment against, but the election does not need to be made until after the verdict.[168]  Therefore, Kolodziej may not be able to take judgment against both Cheney Mason and the Law Firm, but that is not an issue at this time.[169]  Instead, Kolodziej is entitled to wait until after trial to elect which defendant he will take judgment against.  Summary judgment, therefore, is inappropriate on Mason's claim that Kolodziej cannot recover against both defendants.

## V.      Conclusion.

Kolodziej has provided more than a scintilla of evidence that a reasonable person would view Mason's challenge as a legitimate offer that he could accept.  And Kolodziej has provided more than a scintilla of evidence that he performed the challenge, thus accepting Mason's offer and forming a contract.  Kolodziej, therefore, has shown that there is a genuine issue of material fact on his breach-of-contract claim against Mason.  This Court should deny Mason's summary-judgment motion.

Respectfully submitted this 15th day of July, 2013.

---

[167] *Collins*, 138 So. at 370.

[168] *Amoroso*, 604 So.2d at 832; *Bertram Yacht Sales, Inc.*, 209 So. 2d at 679.

[169] Kolodziej is not conceding that he cannot take judgment against both Cheney Mason and the Law Firm.  Instead, for purposes of this summary-judgment response, Kolodziej is explaining that even if he could recover against only one of the defendants, that is not an election that he must make until after the trial.

| | |
|---|---|
| John A. Boudet, Esq. | /s/ David George |
| Florida Bar No. 515670 | David George |
| Trial Counsel | *Admitted Pro Hac Vice* |
| ROETZEL AND ANDRESS | Texas Bar No. 00793212 |
| 420 S. Orange Avenue | CONNELLY • BAKER • WOTRING LLP |
| CNL Tower II, Seventh Floor | 700 JPMorgan Chase Tower |
| Orlando, FL 32801 | 600 Travis Street |
| Telephone:  (407) 245-2451 | Houston, Texas  77002 |
| Fax:  (407) 835-3596 | Telephone:  (713) 980-6513 |
| jboudet@ralaw.com | Fax: (713) 980-1701 |
| | dgeorge@connellybaker.com |

*Counsel for Plaintiff*

]

### CERTIFICATE OF SERVICE

I certify that on July 15, 2013, this document was served on the following counsel of record through this Court's ECF system:

| | |
|---|---|
| Louis K. Bonham | Thomas K. Equels |
| OSHA LIANG LLP | EQUELS LAW FIRM |
| Two Houston Center | 860 N. Orange Ave., Suite 600 |
| Suite 3500 | Orlando, Florida 32801 |
| 909 Fannin Street | tequels@equelslaw.com |
| Houston, Texas 77010 | |
| bonham@oshaliang.com | |

/s/ David George
David George